IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| STEVEN M. FITTEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:20-cv-676 (LMB/IDD) |
| ) | |
| RYAN D. MCCARTHY, Secretary of the Army, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Before the Court are Motions to Dismiss filed by defendant Ryan D. McCarthy, Secretary of the Army ("Army" or "defendant"), to which pro se plaintiff Steven M. Fitten ("Fitten" or "plaintiff") has filed an opposition which includes a Motion to Amend Complaint with Attached Proposed Amended Complaint. The motions have been fully briefed. Finding that oral argument would not assist the decisional process, the motions will be resolved on the materials filed by the parties. Those materials include the EEOC Final Agency Decisions, which plaintiff attached to his original Complaint. For the reasons discussed below, plaintiff's Motion to Amend Complaint and defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(1) will be denied, defendant's Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) will be granted, and judgment will be entered in defendant's favor.

### I. BACKGROUND

Plaintiff was born in 1951 and has "African, Hispanic and Native American ancestry." [Dkt. No. 1] at ¶ 5. In 1978, he was admitted to practice law, and he served on active duty with the U.S. Coast Guard Judge Advocate General ("JAG") Corp from 1989 through 1993, in addition to serving as a reservist with the U.S. Air Force and Air National Guard from 1993

through 2000. Plaintiff also had a 30-year career as a civilian employee of the federal government, including positions with the Army, the U.S. Air Force, and the International Boundary & Water Commission. Id. His roles throughout his civilian career included contract negotiator, contract specialist, cost/price analyst, and contracting officer, and he is certified by the Defense Acquisition University as a Level III Acquisition Professional. Plaintiff retired in March of 2013, but alleges that he "has maintained his proficiency in the federal acquisition field by teaching ... Defense Acquisition University Level II [f]ederal acquisition certification courses." Id. at ¶ 6. He has also maintained his law license, working on pro bono matters and taking continuing legal education courses. Id.

Plaintiff alleges that "[s]ince 2012, [he] has applied for at least 16 vacancies with the 411 Contracting Support Brigade (CSB), formerly known as the U.S. Army Contracting Command Korea (USACCK), without being interviewed or selected." [Dkt. No. 1] at ¶ 15. Only two of those applications are relevant to this litigation, both for the same contract specialist position with the 411 Contract Support Brigade based in Daegu, South Korea. Id.

The selection process for this contract specialist position consisted of three stages. [Dkt. No. 1-3] at 4. First, applications were reviewed and, if found to be appropriate for the position being advertised, they were referred for evaluation. At the second stage, known as the résumé rating stage, a panel of three reviewers gave numerical ratings to each résumé based on how it satisfied the rating criteria for the position. The top-rated candidates were referred for interviews before a three-person interview panel which made the final recommendation to the ultimate decisionmaker. Id.

Plaintiff first applied for the contract specialist position in response to Vacancy ID 1880239 ("First Vacancy Announcement"), which was announced in December of 2016. [Dkt.

No. 1] at ¶ 15; [Dkt. No. 24-2]. His application was not initially referred for review to the résumé rating panel. [Dkt. No. 1] at ¶ 15. On January 23, 2017, a government hiring freeze was announced and the hiring process for that position stopped. Id. at ¶ 18. Plaintiff nevertheless filed an EEO complaint on January 23, 2017 based on defendant's failure to refer his application for review. Id. at ¶ 16. There is no allegation in this record that any action was taken on this vacancy after the hiring freeze was announced.

On June 29, 2017, a new announcement, Vacancy ID 100210674 ("Second Vacancy Announcement"), was issued and plaintiff again submitted an application, which was among the 37 applications referred to the résumé rating panel. [Dkt. No. 1] at ¶ 19; [Dkt. No. 1-3] at 3-4. The résumé rating panel for this vacancy consisted of Major Won Chung ("Chung"), the Regional Contracting Office Chief; Anthony Dunaway ("Dunaway"), the Regional Contracting Office Deputy Chief; and Kimberly Newman ("Newman"), Contracting Officer and Team Leader. This panel rated each of the applications that were referred for consideration on the basis of five criteria: Education, Leadership Training, Contract Specialist Experience, Contracting Officer Experience, and Awards. The panel assigned numerical point values for each of these criteria based on the following guidelines:

> The resume scoring criteria shows that Education had a score of 5 points for a Master's Degree (non-business) and 10 points for a Master's Degree or higher (business); 5 points for Leadership Training (SBLM, CGSC, OLE, CES Advance, etc. [sic]; 5 points for 3-5 years of Contracting Officer experience and 10 points for over 5 years of contracting officer experience (above SAT and within the last 15 years); 5 points for Contract Specialist Experience (3-5 years of Post, Camp, Station/Installation experience) and 10 points for over 5 years of Post, Camp, Station/Installation experience) within the past 15 years; and 5 points for Awards above Commander level.

[Dkt. No. 1-3] at 4. All three review panelists gave plaintiff a score of 10 for Education, 0 for Leadership Training, 0 for Contracting Officer Experience, and 0 for Awards. Two panelists

3

(Dunaway and Newman) gave plaintiff a score of 10 for Contract Specialist Experience, but the third panelist (Chung) gave him a 0 for this category. The disagreement between panelists reflects an inconsistent application of the scoring criterion for Contract Specialist Experience, which required that points only be given for work done within the last 15 years (candidates were supposed to receive a score of 5 if they had between 3 and 5 years of relevant experience within the last 15 years, and a score of 10 for more than 5 years' experience in that same period). Id. Plaintiff had served as a contract specialist between 1986 and 1995 (outside the 15-year window), but as a contracts attorney from 2006-2008 (inside the 15-year window). Id. at 5.

Plaintiff's final résumé score was 50, which was the total of the three 10s earned for Education, and the two 10s awarded by Dunaway and Newman for Contract Specialist Experience. Id. at 4-5.[1] The résumé rating panel considered 37 applications for the position, and referred the ten top-rated applicants to the interview panel. The résumé scores for the candidates who were recommended for an interview ranged from 75 to 95. [Dkt. No. 1-3] at 4-5. Of the ten candidates referred for an interview, three dropped out, leaving seven who were actually interviewed. The candidate who was ultimately selected for the position was Daniel Shin ("Shin"), who had the highest combined score (196) of any candidate, after adding together his résumé review score (90) and his interview score (106).

Plaintiff filed an EEO complaint on April 12, 2018, after he learned that Shin was selected to fill the contract specialist vacancy. In his complaint, he alleged that "he was subjected to discrimination based upon race (African-American, Hispanic and Native American), age (66; born, October 9, 1951) and reprisal (prior EEO activity)." [Dkt. No. 1-3] at 1. That complaint did

---

[1] Even if Chung had given plaintiff a 10 for Contract Specialist Experience, his total score would have been 60, which was still below the top-ten scoring applicants who were referred for an interview.

4

not include a claim of disability discrimination. Id. On June 14, 2019, the Army issued a Final Agency Decision on plaintiff's EEO complaint, which found that plaintiff "was not subjected to discrimination based upon the evidence in the case file." Id. On September 26, 2019, plaintiff filed a lawsuit in the United States District Court for the District of Hawaii, alleging that he was not hired for several different vacant positions in Hawaii and South Korea because of racial discrimination in violation of Title VII (Count I), age discrimination in violation of the ADEA (Count II), disability discrimination in violation of the Rehabilitation Act (Count IV), and retaliation for engaging in activities protected by the forgoing statutes (Count III). [Dkt. No. 1]. The district court in Hawaii entered an order that found that its district was not the proper venue for the claims related to the South Korea positions, and transferred those claims to this district. Defendant has moved to dismiss those claims, and plaintiff has moved to file an amended complaint alleging the same four counts as were raised in the original Complaint but focusing on the South Korea position. [Dkt. No. 30-12].

## II. DISCUSSION

### A. **Motion to Amend**

Federal Rule of Civil Procedure 15(a)(2) states that courts "should freely give leave" to amend a pleading "when justice so requires." Leave to amend should only be denied when "the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." Edwards v. City of Goldsboro, 178 F.3d 231, 242 (4th Cir. 1999) (quoting Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986)). Defendant argues that leave to amend would be futile, because the proposed amended complaint "remains virtually identical to the relevant portions of his original complaint, and otherwise fails to correct the numerous deficiencies in his first pleading." [Dkt. No. 31] at 12. Defendant's futility argument is meritorious. Although the proposed amended complaint adds the additional

5

allegations that the individual hired was of a different race and was younger than plaintiff, which are essential elements for the prima facie case for race and age discrimination, none of the additional claims cure the significant defects in plaintiff's original Complaint. Because the defendant's Motions to Dismiss clearly pointed out the pleading deficiencies in the original Complaint, that plaintiff failed to correct all of them in his proposed amended complaint fully supports the conclusion that leave to amend would be futile. Therefore, the Motion to Amend will be denied.

### B. Motions to Dismiss

#### 1. Standard of Review

Federal Rule of Civil Procedure 12(b)(6)[2] requires dismissal of a complaint when a "plaintiff's allegations fail to state a claim upon which relief can be granted." Adams v. NaphCare, Inc., 244 F. Supp. 3d 546, 548 (E.D. Va. 2017). A complaint must be more than speculative, and must "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (internal quotation marks and citations omitted). When considering a motion to dismiss, the court assumes that the facts alleged in the complaint are true and resolves factual disputes in the plaintiff's favor, Robinson v. Am. Honda Motor Co., 551 F.3d 218, 222 (4th Cir. 2009); however, a court "is not bound by the complaint's legal conclusions," conclusory allegations, or unwarranted inferences. Id. A court may consider

---

[2] Defendant has also filed an alternative Motion to Dismiss for lack of jurisdiction under Rule 12(b)(1), because the "law is currently unsettled on whether failure to exhaust" employment discrimination claims "by a plaintiff proceeding against a federal agency presents a jurisdictional defect (Rule 12(b)(1)), or alternatively is a failure to state a claim (Rule 12(b)(6))." [Dkt. No. 24] at 13-14 n.6. Because the law is unsettled, the court will evaluate the issue under Rule 12(b)(6).

6

"documents attached to the complaint or the motion to dismiss 'so long as they are integral to the complaint and authentic.'" Kensington Volunteer Fire Dep't, Inc. v. Montgomery County, Md., 684 F.3d 462, 467 (4th Cir. 2012) (quoting Phillips v. Pitt Cty. Memorial Hosp., 572 F.3d 176, 180 (4th Cir. 2009)). Plaintiff attached three exhibits to his original Complaint, including a copy of the Department of the Army's final EEO decision related to his non-selection for the contract specialist position. He also attached to his Opposition to defendant's Motions to Dismiss eleven exhibits, including his declaration made under penalty of perjury, which had been submitted during the EEO investigation. The Court has considered these documents, which are clearly integral to the allegations in the Complaint and for which plaintiff has not raised any issue concerning authenticity.

Courts generally must "construe allegations in a pro se complaint liberally." Thomas v. Salvation Army So. Territory, 841 F.3d 632, 637 (4th Cir. 2016). The justification for this liberal construction requirement is that "a typical pro se plaintiff does not have legal training and is unfamiliar with the legal system," Polidi v. Bannon, 226 F. Supp. 3d 615, 616 n.1 (E.D. Va. 2016); however, where "the pro se plaintiff is a practicing or former attorney, courts have declined to give liberal construction to the complaint." Id.

2. Failure to Exhaust

A civil action filed by a plaintiff alleging employment discrimination by a federal employer under Title VII, the ADEA, or the Rehabilitation Act is limited to those claims which were exhausted at the administrative level. Claims which were not the subject of an earlier EEO complaint cannot be raised in a later judicial complaint, because doing so would "depriv[e] the employer of adequate notice and result[ ] in a failure to investigate by the responsible agency." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 963 (4th Cir. 1996). Once a federal plaintiff receives a Final Agency Decision on an EEO complaint, he or she must either file an

7

appeal with the EEOC within 30 days, or file a civil action in federal court within 90 days. 42 U.S.C. § 2000e-16(c). Defendant argues that all of plaintiff's claims related to the First Vacancy Announcement are time-barred, because plaintiff failed to comply with the 90-day time period for filing a complaint, and that plaintiff's Rehabilitation Act claim is barred because it was not included in his EEO complaint.

Plaintiff responds that he filed an EEO complaint related to the First Vacancy Announcement on January 23, 2017, when the position was cancelled due to the hiring freeze. [Dkt. No. 30-12] at ¶ 8. According to plaintiff, his second EEO complaint—which he filed in 2018 after learning that Shin had been awarded the contract specialist position—was "accepted … as an amendment to the first action." [Dkt. No. 29] at 5. Under plaintiff's construction, the 2019 Final Agency Decision resolved both EEO complaints, meaning that his claims related to both vacancy announcements were timely filed within 90 days of the 2019 decision. See [Dkt. No. 30-12] at See [Dkt. No. 30-12] at ¶ 7 ("Final Agency Decisions (FAD) were requested, rendered and served upon Plaintiff on 29 June 2019."). Although defendant has attached to its Motions to Dismiss evidence which strongly supports its characterization of a different procedural record, at the dismissal stage a court must make all reasonable inferences in favor of the plaintiff. Considering plaintiff's argument that he was permitted to amend his first EEO complaint as well as the 2019 Final Agency Decision's mention of both the First and Second Vacancy Announcements, the Court will assume for the purposes of deciding the Motions to Dismiss that, with the exception of any disability discrimination claims, the claims relating to the First Vacancy Announcement were timely filed.

Even making all inferences in plaintiff's favor, it is clear that plaintiff's Rehabilitation Act claim (Count IV) has not been exhausted and must be dismissed. The 2019 Final Agency

Decision—which is the only agency action on which plaintiff's complaint could have been timely based—addresses only claims of race and age discrimination, and reprisal for protected activity. [Dkt. No. 1-3] at 1. There is also no mention of any disability in the decision's background recitation. Id. In his Opposition, plaintiff argues that his disability claim is exhausted because he requested that such a count be added by amendment and his request was denied, [Dkt. No. 24] at 12; however, that allegation appears nowhere in either the original or the proposed amended complaints, which instead falsely assert that the disability claim was included in plaintiff's EEO complaints. See [Dkt. No. 30-12] at ¶¶ 7, 8. As an experienced attorney, plaintiff should be aware that he cannot broaden the scope of his complaint through briefing. What is more, this bare assertion in plaintiff's Opposition is contradicted by the 2019 Final Agency Decision, which he attached to his Complaint and which does not address disability discrimination or the Rehabilitation Act in any way. See Fayetteville Invs. v. Commercial Builders, Inc., 936 F.2d 1462, 1465 (4th Cir. 1991) ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached ..., the exhibit prevails."). Because nothing submitted by plaintiff shows that he included a disability claim in his EEO complaint, Count IV will be dismissed.[3]

---

[3] Even if plaintiff had exhausted this claim, in neither his original nor his proposed amended complaint does he plead a prima facie case of being disabled under the meaning of the Rehabilitation Act, which protects employees from discrimination because of disabilities which act as a "substantial limitation of a major life activity." Forris v. Bowen, 794 F.2d 931, 933-34 (4th Cir. 1986) (emphasis in original). Plaintiff claims that he is disabled because of a "handicap that stem[s] from two heart surgical procedures performed in 2003 and 2004." [Dkt. No. 30-12] at ¶ 14; but he does not elaborate further on what this "handicap" entails or allege that two surgical procedures from more than a decade ago substantially limited any major life activities. Therefore, this Count will also be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).

9

3. Failure to State a Claim

Counts I, II, and III allege racial discrimination, age discrimination, and retaliation, respectively. [Dkt. No. 30-12] at ¶¶ 15-18. To plead that a decision not to hire an applicant was motivated by racial discrimination in violation of Title VII, a plaintiff must allege that "(1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified for the position; and (4) he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." Brown v. McClean, 159 F.3d 898, 902 (4th Cir. 1998). Similarly, to plead age discrimination in violation of the ADEA, a plaintiff must allege that "(1) he is a member of the protected class, namely 'individuals who are at least 40 years of age,' 29 U.S.C. § 631(a); (2) he applied for and was qualified for the position; (3) he was rejected despite his qualifications; and, (4) the position remained open or was filled by a substantially younger person." Motley v. Virginia, 3:16-cv-595, 2018 WL 1472491, at *4 (E.D. Va. Mar. 26, 2018). Finally, to plead retaliation, a plaintiff must allege (1) that he engaged in a protected activity; (2) that he suffered an adverse employment action, in this case non-selection; and (3) that a causal connection existed between the protected activity and the asserted adverse action. Laber v. Harvey, 438 F.3d 404, 432 (4th Cir. 2006).

For these claims of discrimination and retaliation to survive dismissal, it is not sufficient for plaintiff to plead that he had a protected characteristic or had participated in a protected activity and was not hired. Instead, he must plead facts that support a plausible claim that defendant's failure to hire him was caused by the protected characteristic or activity. See e.g., McCleary-Evans v. Maryland Dep't Transp., State Highway Admin., 780 F.3d 582, 583 (4th Cir. 2015) (dismissing race discrimination claim where plaintiff "failed to include adequate factual allegations to support a claim that the [employer] discriminated against her because she was African American") (emphasis in original); E.E.O.C. v. Baltimore County, 747 F.3d 267, 272

10

(4th Cir. 2014) (holding that the ADEA "prohibits employers from refusing to hire, discharging, or otherwise discriminating against any person who is at least 40 years of age 'because of' the person's age") (quoting 29 U.S.C. §§ 623(a)(1), 631(a)); Laber, 438 F.3d at 432 (holding that retaliation requires "a causal link"). Plaintiff cannot plausibly plead that discrimination or retaliation was the reason he was not hired to fill the First Vacancy Announcement because, as the Complaint alleges and the plaintiff concedes, that announcement was cancelled due to a hiring freeze. [Dkt. No. 1] at ¶ 18 ("A hiring freeze went into effect around January 23, 2017 and ended May 2, 2017."). Although plaintiff argues that the Contract Support Brigade was exempt from this hiring freeze, he does not allege that the office continued to hire for the contract specialist position or any other positions. To the extent that plaintiff wants the Court to infer that the defendant used the hiring freeze as a pretext for not hiring him, he would have to have alleged some facts showing that the same Army officials actually continued to hire during that time period. Such facts are not included in plaintiff's original Complaint, and after being put on notice of this pleading defect in defendant's Motions to Dismiss, the proposed amended complaint did not address it.

Plaintiff has also not plausibly pleaded that discrimination or retaliation caused his non-selection after the Second Vacancy Announcement re-advertised the position. Regarding his retaliation claim, plaintiff's allegation of causation is undercut by the amount of time that passed between January 23, 2017, when he claims he filed his initial EEO complaint, and August 2017, when the decision was made to hire another candidate for the contract specialist position. [Dkt. No. 1-3] at 6-7. See Perry v. Kappos, 489 F. App'x 637, 643 (4th Cir. 2012) (finding that an "adverse employment decision" must "follow[ ] ... protected activity 'very closely'" to establish causation through temporal proximity) (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268,

11

273 (2001)). The passage of time is less decisive in this case than it otherwise might be, considering that all activity involving filling the contract specialist position stopped when the hiring freeze was announced and defendant did not hire plaintiff "at the first available opportunity" after the freeze ended, Price v. Thompson, 380 F.3d 209, 213 (4th Cir. 2004); however, the more than six-month-lapse between plaintiff's alleged protected activity and his non-selection is still a factor that weighs against finding that he has properly pleaded causation as to his retaliation claim.

The more serious problem with all three of plaintiff's discrimination claims is that he has not plausibly alleged facts indicating that the three résumé rating officials knew anything about his protected characteristics or protected activity. Under both Title VII and the ADEA, an allegation of causation is not plausible if it is not supported by allegations or reasonable inferences that the decisionmakers for the employer were aware of the plaintiff's race, age, or protected activity. See Holland v. Washington Homes, Inc., 487 F.3d 208, 218 (4th Cir. 2007) ("To prove a causal connection ... [t]he first thing [the employee] must be able to prove ... is [the decisionmaker's] knowledge that he engaged in a protected activity."); Bandy v. Advance Auto Parts, Inc., 7:11-cv-365, 2012 WL 6018741, at *7 (W.D. Va. Nov. 29, 2012) ("[A]ge cannot have been the but-for cause of [the employee's] termination if [the decisionmaker] did not know [the employee] and did not know his age.").

In plaintiff's sworn statement to EEO investigators, he was asked who he believed was responsible for the alleged discrimination. He identified nine officials and former officials of the 411 Contract Support Brigade who were aware of his race, age, and prior EEO complaints: Division Chief Frances Walker, Human Resources Specialist Kyong Mi Pak, Deputy Principal Assistant Responsible for Contracting Daniel Cottrell, Director of Contracting Fidel Macan,

former Deputy Principal Assistant Responsible for Contracting Michael Cooper, former Contracting Support Brigade Commander David Ware, former Director of Contracting, Timothy Powers; Agency Counsel Stephen L. Parker; and Michael Proc, whose position he does not disclose. [Dkt. No. 29] at 17, 19; see also [Dkt. No. 1] at ¶ 21. Of these nine individuals, only two—Fidel Macan ("Macan") and Daniel Cottrell ("Cottrell")—were involved in the hiring process for the contract specialist position. According to the 2019 Final Agency Decision, Macan "believes he was the selecting official for the position at issue," and Cottrell signed off on questions to be asked at the interview phase and was included on the memorandum requesting approval to hire Shin for the position. Dkt. No. [1-3] at 4, 7.

      Even assuming that plaintiff has adequately alleged that Macan and Cottrell knew about his protected characteristics and protected activity, and harbored discriminatory or retaliatory animus against him, there are no allegations in either of plaintiff's complaints or any of the exhibits he has filed which show or even suggest that Macan and Cottrell were involved in the hiring process during the résumé rating phase. This fact is critical, because plaintiff's application never made it past that phase of the hiring process, which was conducted by three individuals, none of whom were identified by plaintiff in his declaration or the Complaint as knowing about his protected characteristics or activity. Moreover, two of those panelists—Chung and Dunaway—submitted declarations during the EEO investigation in which they swore under the penalty of perjury that they were not aware of plaintiff's race, age, or prior EEO activity when they gave his résumé a score that did not qualify him to proceed to the interview stage. [Dkt. No. 1-3] at 8.[4]

---

[4] The 2019 Final Agency Decision does not reference a similar declaration from the third panelist, Newman, but neither that decision nor the Complaint state that Newman was aware of plaintiff's race, age, or prior EEO activity. Additionally, Newman was one of the two panelists

The only allegation that plaintiff makes about the résumé review panel is the claim in his proposed amended complaint that "the selection panel members and managerial selecting officials[ ] intentionally manipulated score cards and score sheets for every vacancy Plaintiff applied for, in order to reduce the number of points that would have certainly qualified Plaintiff for an interview and eventually [sic] hiring." [Dkt. No. 30-12] at ¶ 13. In his Opposition, plaintiff explains that this alleged "manipulation" included the résumé review panel's practice of only giving credit for contract specialist experience within the last 15 years, [Dkt. No. 29] at 7; however, the 2019 Final Agency Decision shows that any deviation from the scoring criteria by the résumé review panel actually benefitted plaintiff. See Fayetteville Invs., 936 F.2d at 1465 ("[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached …, the exhibit prevails."). Even though plaintiff's last period of service as a contract specialist was outside the 15-year window, two of the three panel members (Dunaway and Newman) gave him credit for it anyway. [Dkt. No. 1-3] at 4-5. Nor would it have made any difference if all three panel members had disregarded that criterion and given plaintiff credit for his experience outside the 15-year window: even earning full marks in that category, his résumé still would have earned a score of 60, 15 points lower than the next lowest candidate who was recommended for an interview. Id. at 10. In his Opposition, plaintiff also argues that he was not given "due point credit" in various other categories including Education,[5] Leadership Training, and Awards. [Dkt. No. 29] at 7; however, neither the original nor the proposed amended complaints includes allegations that would support a finding that plaintiff should have received these marks under the

---

who gave plaintiff a score of 10 for Contract Specialist Experience when rating his application, even though his relevant experience was outside the 15-year window established by the scoring criteria.

[5] Plaintiff actually received the full 10 points for Education from all three panelists.

scoring system being used. In other words, plaintiff has not alleged that he had leadership training or had received any awards that would have qualified under the scoring criteria. Plaintiff's disagreement with the scoring criteria that were used is not sufficient to "giv[e] rise to an inference of unlawful discrimination." Brown, 159 F.3d at 902.

Because plaintiff has failed to allege facts which create a plausible claim that defendant's decision not to hire him for the contract specialist position at issue was motivated by his race, age, or prior engagement in protected activity, Counts I, II, and III will be dismissed.

### III. CONCLUSION

For the reasons stated above, plaintiff's Motion to Amend and defendant's Motion to Dismiss under Rule 12(b)(1) will be denied; defendant's Motion to Dismiss under Rule 12(b)(6) will be granted; and judgment will be entered in favor of defendant by an Order to be issued with this Memorandum Opinion.

Entered this 17th day of February, 2021.

Alexandria, Virginia

/s/ 
Leonie M. Brinkema
United States District Judge